UNITED STATES DISTRICT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  09-10441

| | |
|---|---|
| MICHAEL WINSTANLEY ARCHITECTS PLANNERS, PC., | ) ) ) |
| Plaintiff | ) ) ) |
| v. | ) ) |
| JASON E. STONE, AMANDA BURDEN, BAY HARBOUR, LLC I, BAY HARBOUR, LLC II, TIM LUFF, ARCHI-TECH ASSOCIATES, INC., PATRICK ELEEY, THE ADDISON GROUP, and J & B CONSTRUCTION INC., | ) ) ) ) ) ) ) ) |
| Defendants | ) |

## VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT
## AND
## JURY DEMAND

### A. The Parties

1.      Plaintiff Michael Winstanley Architects Planners, PC ("MWAP") is a professional corporation organized under the laws of the Commonwealth of Virginia with a principal place of business located at 107 N. West Street, Alexandria, Virginia.

2.      MWAP's founder and principal is Michael R. Winstanley ("Winstanley").

3.      MWAP provides a range of architectural, planning, and design services to cultural, educational, residential, and commercial clients. Those services include: planning and urban design, interior and landscape design, designing buildings, drafting architectural plans and

drawings, and graphic design. MWAP has won numerous awards for its design work and is recognized as a design leader in the industry. MWAP's services are sold internationally and in interstate commerce.

4.      Defendant Jason E. Stone ("Stone") is a natural person and a resident of the Commonwealth of Massachusetts who serves as the Resident Agent of defendants Bay Harbour, LLC I and Bay Harbour, LLC II. Stone, together with defendant Amanda Burden, is presently an owner and developer of Bay Harbour, and is himself the owner of Lot 16 at Bay Harbour.

5.      Defendant Amanda Burden ("Burden") is a natural person and, upon information and belief, a resident of the Commonwealth of Massachusetts. Burden, together with defendant Stone, is presently an owner and developer of Bay Harbour, and is herself the owner of Lot 15 at Bay Harbour.

6.      Defendant Bay Harbour, LLC I is a Limited Liability Company organized under the laws of the Commonwealth of Massachusetts with a principal office located at 12 Mall Way, Mashpee, Massachusetts. Stone serves as the Resident Agent of Bay Harbour, LLC I.

7.      Defendant Bay Harbour, LLC II is a Limited Liability Company organized under the laws of the Commonwealth of Massachusetts with a principal office located at 156 Waterway, Mashpee, Massachusetts. Stone serves as the Resident Agent of Bay Harbour, LLC II.

8.      Defendant Archi - Tech Associates Inc. ("Archi - Tech") is, upon information and belief, a professional corporation organized under the laws of the Commonwealth of Massachusetts with a principal office located at 6 School Street, Cotuit, Massachusetts.

9.     Defendant Tim Luff ("Luff") is a natural person and an architect licensed to practice within the Commonwealth of Massachusetts who is affiliated with defendant Archi - Tech.

10.     Defendant The Addison Group is, on information and belief, a professional corporation organized under the laws of the Commonwealth of Massachusetts with a principal office located in Provincetown, Massachusetts.

11.     Defendant Patrick Eleey ("Eleey") is a natural person and, upon information and belief, a landscape architect licensed to practice within the Commonwealth of Massachusetts who is affiliated with defendant The Addison Group.

12.     Defendant J & B Construction Inc. ("J & B") is a construction company specializing in custom home construction that is organized under the laws of the Commonwealth of Massachusetts with a principal place of business located in Forestdale, Massachusetts.

## B. Jurisdiction and Venue

13.     This Court has personal jurisdiction over all defendants.

14.     This Court has subject matter jurisdiction over this civil action for copyright infringement pursuant to 28 U.S.C. §1331 and §1338(a), and over the pendant state claims based upon diversity of citizenship jurisdiction pursuant to 28 U.S.C.§1332(a)(1), as the amount in controversy exceeds $75,000 and the action is between citizens of different states.

15.     Venue is proper pursuant to 28 U.S.C.A. §1391 and §1400.

## C. The Bay Harbour Project

16.     Sometime prior to May, 2005, a local Provincetown developer, William A. Gordon ("Gordon"), acquired through an entity entitled the Clancy Realty Trust of which Gordon and another served as co-trustees, a seven (7) acre parcel of land on the far eastern end of the Town

of Provincetown, Massachusetts. At the time of that acquisition, the parcel was occupied by a

sixty-four (64) - unit hotel known as "The Tides".

17.     It was Gordon's plan to develop on the parcel a ten (10) - unit residential oceanfront

community known as Bay Harbour ("Bay Harbour" or "the Project"). Toward that end Gordon

formed Bay Harbour, LLC, a Limited Liability Company organized under the laws of the

Commonwealth of Massachusetts with a principal place of business located at 837 Commercial

Street, Provincetown, Massachusetts. At all pertinent times, Gordon served as manager and

Resident Agent of Bay Harbour, LLC.

18.     At some point Gordon was introduced to Winstanley, an international award-

winning architect who had summered in Provincetown since his youth, who was intimately

familiar with the locality of Bay Harbour, and who was himself in the process of designing and

building his own residence very near Bay Harbour. Discussions between Gordon and Winstanley

ensued, and Gordon ultimately selected MWAP to be the architect for the Project.

19.     Beginning in May, 2005 and extending over a two-year period, Gordon and MWAP

entered into a series of letter agreements pursuant to which MWAP provided Gordon, in phases,

with master planning, architectural design, and landscape design services for the Project. In

addition, Winstanley was to make himself available for public presentations of the Project.

20.     The services that MWAP provided Gordon were divided into three main categories:

(i) development of a Master Plan (the "MWAP Master Plan"), (ii) drafting of common area

landscape construction documents (the "MWAP Landscape Plans"), and (iii) preparation of

architectural permit documents for Lots 10 - 16, the Lots that then comprised Bay Harbour (the

"MWAP Permit Documents"). The MWAP Master Plan, the MWAP Landscape Plans, and the

MWAP Permit Documents, together with the associated illustrative material describing the Project, are collectively referred to as the "Winstanley Design for Bay Harbour".

21.     The first element of the Winstanley Design for Bay Harbour, the MWAP Master Plan, was assembled in a folio-sized Design Book (the "Design Book") and was comprised of the following sub-elements: (i) a Site Plan, consisting of a plan view color drawing of the Project depicting the layout of the ten (10) Lots (numbered as Lots 7 through 16), the layout of the common areas, and the landscape design (the "MWAP Site Plan"); (ii) a Site Model; (iii) architectural designs of prototypical residences for the five (5) waterfront and the five (5) waterview Lots comprising Bay Harbour (the "Prototypical Residence Designs"); (iv) color renderings of the Project; and (v) covenants and design guidelines for the Project.

22.     The second component of the Winstanley Design for Bay Harbour, the MWAP Landscape Plans, consisted of an existing conditions plan, construction notes and details, and plans for layout, grading, and landscaping.

23.     The third and final piece of the Winstanley Design for Bay Harbour, the Permit Documents, consisted of foundation plans, roof and floor plans, building elevations, wall sections, window schedules, and structural notes and plans for houses for each of the Lots that then comprised Bay Harbour, all stamped and signed by MWAP for professional certification so that Gordon could obtain building permits from the Town of Provincetown.

24.     All told, Gordon paid MWAP a total of $271,479.32 for the Winstanley Design for Bay Harbour.

25.     The Winstanley Design for Bay Harbour and its constituent components is an original work of authorship and constitutes copyrightable subject matter under the copyright laws of the United States (17 U.S.C.A. §101, *et seq*.).

26.    MWAP is the author of the Winstanley Design for Bay Harbour and the current claimant in the copyright of the Winstanley Design for Bay Harbour and its constituent components.

27.    MWAP has complied in all respects with the copyright laws of the United States and has applied for the exclusive rights and privileges in and to the Winstanley Design for Bay Harbour and its constituent components by delivering to the Copyright Office all the necessary application materials (applications, deposits, and fees). True and accurate copies of MWAP's Application for Copyright Registration covering the MWAP Landscape Plans and the front side of the check used to remit the fee are attached hereto as Exhibit A. True and accurate copies of MWAP's Application for Copyright Registration covering the MWAP Permit Drawings for Lots 10 - 16 and the Design Book (containing the MWAP Master Plan, MWAP Site Plan, Site Model, and Prototypical Residence Designs) plus the front side of the check used to remit the fee are attached hereto as Exhibit B.

28.    Commencing on the date of first publication, and consistently thereafter, the Winstanley Design for Bay Harbour has been acknowledged and published by MWAP in conformity with the copyright laws of the United States.

29.    Sometime during 2007, having sold Lots 7 and 8 of the Project as raw land, Gordon used the MWAP Permit Drawings and other components of the Winstanley Design for Bay Harbour to obtain building permits from the Town of Provincetown for each of the then remaining eight (8) Lots of the Project, Lots 9 - 16 (the "Gordon Permits").

30.    Gordon began selling the permitted Lots of Bay Harbour to builders and homeowners. Lot 9 was sold to a local builder in 2007; Lot 11 was sold to a homeowner in 2008.

31.     On or about June 10, 2008, with the housing market deteriorating, Gordon sold to defendant Bay Harbour, LLC I, defendant Bay Harbour, LLC, II, and to certain other affiliated persons and entities, all of his remaining rights, title, and interest to Bay Harbour (the "Gordon Sale"). At the time this consisted principally of Gordon's rights, title, and interest in the following six (6) permitted Lots: Lot 10, plus Lots 12 – 16 (collectively, the "Six Lots").

32.     The Gordon Sale resulted in the transfer of title to each of the Six Lots and ownership in the corresponding Gordon Permits to four buyers (the "Four Buyers") as follows: Lots 10 and 13 to defendant Bay Harbour, LLC I;  Lots 12 and 14 to defendant Bay Harbour, LLC II;  Lot 15 to Amanda Burden, LLC; and Lot 16 to Jason E. Stone, LLC.

33.     On June 4, 2008, six (6) days prior to the Gordon Sale, Winstanley, on behalf of MWAP, and Gordon entered into four nearly identical one-page letter agreements with each of the Four Buyers (the "Four Letter Agreements"). True copies of the Four Letter Agreements are attached hereto as Exhibit C.

34.     Among other terms, each of the Four Letter Agreements contained a provision whereby MWAP would permit Gordon to make to each of the Four Buyers a one-time assignment of the MWAP Permit Documents only, "with rights to use and modify to [*sic*] the work". Other components of the Winstanley Design for Bay Harbour, such as the various elements of the MWAP Master Plan, the MWAP Landscape Plans, plus the copyrights themselves, were not assigned to the Four Buyers by the terms of the Four Letter Agreements.

### D. Copyright Infringement By Defendants

35.     At some point, defendants Luff and Archi-Tech were hired by defendants Stone and Burden to perform architectural services in connection with Bay Harbor, specifically with

respect to the design of a single family house on Lot 12 (the "Lot 12 House") and a single family house on Lot 13 (the "Lot 13 House").

36.     At some point, defendant J & B was hired by defendants Stone and Burden to perform general contracting services in connection with Bay Harbour, specifically the construction of the Lot 12 House and the Lot 13 House.

37.     At some point, defendants Eleey and The Addison Group were hired by defendants Stone and Burden to perform architectural landscape services in connection with Bay Harbour.

38.     Immediately following the Gordon Sale, defendants began construction on the Lot 12 House and the Lot 13 House.

39.     Immediately following the Gordon Sale, defendants also began construction of the common area landscaping for the Project.

40.     Immediately following the Gordon Sale, defendants Stone and Burden established a website (the "Bay Harbour Website") for the purpose of marketing three (3) of the Six Lots: Lots 10, 12, and 13.

41.     The Bay Harbour Website included elements of the Winstanley Design for Bay Harbour, such as the MWAP Site Plan, portions of the MWAP Master Plan, the MWAP Landscape Plans, parts of the Prototypical Residence Designs, and floor plans and house elevations copied from those contained in the Permit Documents for Lots 12 and 13.

42.     At some point following the Gordon Sale, defendants installed a billboard-style sign (the "Billboard Sign") at Bay Harbour that displayed three enlarged color renderings of the Project identical to the color renderings contained in the MWAP Master Plan.

43.   At some point following the Gordon Sale, defendant J & B caused photographs of the Lot 12 House and the Lot 13 House to be taken and later posted on the section of the J & B Website (the "J & B Website") entitled "New Construction - Photo Gallery Bay Harbour 2009".

44.   All the elements of the Winstanley Design for Bay Harbour currently depicted on the Bay Harbour Website, the Billboard Sign, the J & B Website, in the floor plans and elevations for both the Lot 12 House and the Lot 13 House, and in the Lot 12 House and the Lot 13 House as currently built, are being used by defendants without MWAP's prior knowledge, permission, or proper attribution, and their continued use constitutes infringement of MWAP's copyrights on the Winstanley Design for Bay Harbour.

### 1. Infringement of the MWAP Site Plan

45.   The MWAP Site Plan was an important component of the MWAP Master Plan that was contained in the Design Book prepared by MWAP for Gordon. The MWAP Site Plan consisted of a plan, or "bird's eye" view color drawing of Bay Harbour, depicting the layout of the ten (10) Lots, the layout of the common areas, and the landscape design. A true and accurate copy of the MWAP Site Plan as it appeared on page 7 of the Design Book is attached hereto as Exhibit D.

46.   The Bay Harbour Website contains a section entitled "Homes for Sale", the first page of which depicts a plan, or "bird's eye" view color drawing of Bay Harbour, that is identified by the cursor as the "Bay Harbour Ocean view [*sic*] Site Plan" (the "Defendants' Site Plan"). As with the MWAP Site Plan, Defendants' Site Plan shows the location of the lots, the layout of the common areas, and the landscape design for the Project. A true and accurate copy of Defendants' Site Plan as it appears on the Bay Harbor Website is attached hereto as Exhibit E.

47.    Except for stamped notations indicating the sales and development status of six (6) of the Lots and a brief printed explanation of the phenomenon of beach accretion applicable to the waterfront lots of the Project, defendants' Site Plan is identical in all respects to the MWAP Site Plan.

48.    Defendants' Site Plan is being used by defendants without MWAP's permission, prior knowledge, or proper attribution, and its continued use by defendants constitutes infringement of MWAP's copyrights on the Winstanley Design for Bay Harbour.

## 2. Infringement of Other Components of the MWAP Master Plan

49.    In addition to the MWAP Site Plan, the MWAP Master Plan also contained four color renderings that captured elements of the Winstanley Design for Bay Harbour (the "Four MWAP Color Renderings"). True and accurate copies of the Four MWAP Color Renderings as they appear in the MWAP Master Plan are attached hereto as Exhibit F, pp. 1 - 4.

50.    The first of the Four MWAP Color Renderings is similar to the MWAP Site Plan and depicts an angled plan, or "bird's eye" view, of the Project. See Exhibit F, p. 1. The second of the Four Color Renderings is entitled "Bay Harbour Beach Front" and shows a beachfront view of the exteriors of the Prototypical Residence Designs for the five (5) waterfront houses. See Exhibit F, p. 2. The third, entitled "Waterfront House", shows an exterior view of the Prototypical Residence Design for a waterfront house. See Exhibit F, p. 3. The fourth depicts an exterior view of the Prototypical Residence Design for a waterview house. See Exhibit F, p. 4.

51.    In no fewer than twenty (20) color images displayed throughout defendants' Bay Harbour Website, four color renderings are depicted (the "Defendants' Four Color Renderings"). True and accurate copies of Defendants' Four Color Renderings as they appear throughout the Bay Harbour Website are attached hereto as Exhibit G, pp. 1 - 4. Defendants' Four Color

Renderings are identical in virtually all respects to the Four MWAP Color Renderings that are part of the MWAP Master Plan. *Compare* Exhibit F, pp. 1 - 4 *with* Exhibit G, pp. 1 - 4.

52.     On the Billboard Sign that was used by defendants at the construction site of the Project, three (3) color renderings of Bay Harbour are displayed. A true and accurate photograph of the Billboard Sign as of November, 2008 is attached hereto as Exhibit H. These three color renderings are identical in virtually all respects to three (3) of the Four MWAP Color Renderings that are part of the MWAP Master Plan. *Compare* Exhibit F, pp. 1, 3, and 4 *with* Exhibit H.

53.     The Four MWAP Color Renderings are being used by defendants on the Bay Harbour Web Site and on the Billboard Sign without MWAP's permission, prior knowledge, or proper attribution, and their continued use by defendants constitutes infringement of MWAP's copyrights on the Winstanley Design for Bay Harbour.

### 3. Infringement of the MWAP Landscape Plans

54.     The MWAP Landscape Plans were an integral part of the Winstanley Design for Bay Harbour. True and accurate copies of pertinent sections of the MWAP Landscape Plans are attached hereto as Exhibit I, pp. 1 - 3.

55.     Throughout the Bay Harbour Website, and on the Billboard Sign, defendants are depicting unaltered elements of the MWAP Landscape Plans without the permission of MWAP. *See* Exhibit E, "G", and "H".

56.     In addition, defendants have begun landscaping work at Bay Harbour based upon the MWAP Landscape Plans. A true and accurate photographic representation of the landscaping work in progress at Bay Harbour as of November, 2008 is attached hereto as Exhibit J.

57.     The MWAP Landscape Plans are being used and implemented by defendants without MWAP's prior knowledge, permission, or proper attribution on the Bay Harbour

Website, on the Billboard Sign, and in the landscaping work in progress, and their continued use by defendants constitutes infringement of MWAP's copyright on the Winstanley Design for Bay Harbour.

### 4. Infringement of the MWAP Permit Drawings for Lot 12

58.     Another critical element forming the Winstanley Design for Bay Harbour are the MWAP Permit Drawings for the houses on Lots 10 - 16 that were prepared, stamped, and signed by MWAP for professional certification so that Gordon could obtain building permits from the Town of Provincetown for those Lots.

### a. Infringement of the Lot 12 House Floor Plans

59.     The MWAP Permit Documents pertaining to the Lot 12 House contain, among other things, Floor Plans showing the layout and room configuration for the first floor of the Lot 12 House (the "MWAP Lot 12 First Floor Plans"). True and accurate copies of the MWAP Lot 12 First Floor Plans are attached hereto as Exhibit K, p. 1.

60.     The page of defendants' Bay Harbour Website entitled "Homes For Sale" likewise contains, among other things, Floor Plans showing the layout and room configuration for the first floor of the house defendants plan to build on Lot 12 (the "Defendants' Lot 12 First Floor Plans"). True and accurate copies of the Defendants' Lot 12 First Floor Plans are attached hereto as Exhibit K, p. 2.

61.     Defendants' Lot 12 First Floor Plans as currently depicted on the Bay Harbour Website are substantially similar to the MWAP Lot 12 First Floor Plans, are being used by defendants without MWAP's prior knowledge, permission, or proper attribution, and their continued use by defendants constitutes infringement of MWAP's copyright on the Winstanley Design for Bay Harbour.

62.     The MWAP Permit Documents pertaining to the Lot 12 House contain, among other things, Floor Plans showing the layout and room configuration for the second floor of the Lot 12 House (the "MWAP Lot 12 Second Floor Plans"). True and accurate copies of the MWAP Lot 12 Second Floor Plans are attached hereto as Exhibit L, p. 1.

63.     The page of defendants' Bay Harbour Website entitled "Homes For Sale" likewise contains, among other things, Floor Plans showing the layout and room configuration for the second floor of the house defendants plan to build on Lot 12 (the "Defendants' Lot 12 Second Floor Plans"). True and accurate copies of the Defendants' Lot 12 Second Floor Plans are attached hereto as Exhibit L, p. 2.

64.     Defendants' Lot 12 Second Floor Plans as currently depicted on the Bay Harbour Website are substantially similar to the MWAP Lot 12 Second Floor Plans, are being used by defendants without MWAP's prior knowledge, permission, or proper attribution, and their continued use by defendants constitutes infringement of MWAP's copyright on the Winstanley Design for Bay Harbour.

### b. Infringement of the Lot 12 House Elevations

65.     The MWAP Permit Documents pertaining to the Lot 12 House depict, among other things, four elevations for the Lot 12 House, designated as follows: the "MWAP 12 North Elevation", the "MWAP 12 South Elevation", the "MWAP 12 East Elevation", and the "MWAP 12 West Elevation" (collectively, the "MWAP Lot 12 Elevations").

66.     The page of defendants' Bay Harbour Website entitled "Homes For Sale" likewise depicts, among other things, four elevations for the house defendants propose to build on Lot 12, designated as follows: "Defendants' 12 Front Elevation", "Defendants' 12 Rear Elevation",

"Defendants' 12 Left Elevation", and "Defendants' 12 Right Elevation" (collectively "Defendants' Lot 12 Elevations").

67.     Defendants' 12 Front Elevation, a true and accurate copy of which is attached hereto as Exhibit M, p. 2, is substantially similar to its counterpart that forms part of the Winstanley Design for Bay Harbour, the MWAP 12 North Elevation, a true and accurate copy of which is attached hereto as Exhibit M, p. 1.

68.     Defendants' 12 Rear Elevation, a true and accurate copy of which is attached hereto as Exhibit N, p. 2, is substantially similar to its counterpart that forms part of the Winstanley Design for Bay Harbour, the MWAP 12 South Elevation, a true and accurate copy of which is attached hereto as Exhibit N, p. 1.

69.     Defendants' 12 Left Elevation, a true and accurate copy of which is attached hereto as Exhibit O, p. 2, is substantially similar to its counterpart that forms part of the Winstanley Design for Bay Harbour, the MWAP 12 East Elevation, a true and accurate copy of which is attached hereto as Exhibit O, p. 1.

70.     Defendants' 12 Right Elevation, a true and accurate copy of which is attached hereto as Exhibit P, p. 2, is similar to its counterpart that forms part of the Winstanley Design for Bay Harbour, the MWAP 12 West Elevation, a true and accurate copy of which is attached hereto as Exhibit P, p. 1.

71.     Considered collectively, defendants' Lot 12 Elevations as currently depicted on the Bay Harbour Website are substantially similar to the MWAP Lot 12 Elevations, are being used by defendants without MWAP's prior knowledge, permission, or proper attribution, and their continued use by defendants constitutes infringement of MWAP's copyright on the Winstanley Design for Bay Harbour.

### 5. Infringement of the MWAP Permit Drawings for Lot 13

#### a. Infringement of the Lot 13 House Floor Plans

72.     The MWAP Permit Documents pertaining to the Lot 13 House contain, among other things, Floor Plans showing the layout and room configuration for the first floor of the Lot 13 House (the "MWAP Lot 13 First Floor Plans"). True and accurate copies of the MWAP Lot 13 First Floor Plans are attached hereto as Exhibit Q, p. 1.

73.     The page of defendants' Bay Harbour Website entitled "Homes For Sale" likewise contains, among other things, Floor Plans showing the layout and room configuration for the first floor of the house defendants plan to build on Lot 13 (the "Defendants' Lot 13 First Floor Plans"). True and accurate copies of the Defendants' Lot 13 First Floor Plans are attached hereto as Exhibit Q, p. 2.

74.     Defendants' Lot 13 First Floor Plans as currently depicted on the Bay Harbour Website are substantially similar to the MWAP Lot 13 First Floor Plans, are being used by defendants without MWAP's prior knowledge, permission, or proper attribution, and their continued use by defendants constitutes infringement of MWAP's copyright on the Winstanley Design for Bay Harbour.

75.     The MWAP Permit Documents pertaining to the Lot 13 House contain, among other things, Floor Plans showing the layout and room configuration for the second floor of the Lot 13 House (the "MWAP Lot 13 Second Floor Plans"). True and accurate copies of the MWAP Lot 13 Second Floor Plans are attached hereto as Exhibit R, p. 1.

76.     The page of defendants' Bay Harbour Website entitled "Homes For Sale" likewise contains, among other things, Floor Plans showing the layout and room configuration for the second floor of the house defendants plan to build on Lot 13 (the "Defendants' Lot 13 Second

Floor Plans"). True and accurate copies of the Defendants' Lot 13 Second Floor Plans are attached hereto as Exhibit R, p. 2.

77.     Defendants' Lot 13 Second Floor Plans as currently depicted on the Bay Harbour Website are substantially similar to the MWAP Lot 13 Second Floor Plans, are being used by defendants without MWAP's prior knowledge, permission, or proper attribution, and their continued use by defendants constitutes infringement of MWAP's copyright on the Winstanley Design for Bay Harbour.

### b. Infringement of the Lot 13 House Elevations

78.     The MWAP Permit Documents pertaining to the Lot 13 House depict, among other things, four elevations for the Lot 13 House, designated as follows: the "MWAP 13 North Elevation", the "MWAP 13 South Elevation", the "MWAP 13 East Elevation", and the "MWAP 13 West Elevation" (collectively, the "MWAP Lot 13 Elevations").

79.     The page of defendants' Bay Harbour Website entitled "Homes For Sale" likewise depicts, among other things, four elevations for the house defendants propose to build on Lot 13, designated as follows: "Defendants' 13 Front/North Elevation", "Defendants 13 Rear/South Elevation", "Defendants 13 Left/East Elevation", and "Defendants' 13 Right/West Elevation" (collectively "Defendants' Lot 13 Elevations").

80.     Defendants' 13 Front/North Elevation, a true and accurate copy of which is attached hereto as Exhibit S, p. 2, is substantially similar to its counterpart that forms part of the Winstanley Design for Bay Harbour, the MWAP 13 North Elevation, a true and accurate copy of which is attached hereto as Exhibit S, p. 1.

81.     Defendants' 13 Rear/South Elevation, a true and accurate copy of which is attached hereto as Exhibit T, p. 2, is substantially similar to its counterpart that forms part of the

Winstanley Design for Bay Harbour, the MWAP 13 South Elevation, a true and accurate copy of which is attached hereto as Exhibit T, p. 1.

82. Defendants' 13 Left/East Elevation, a true and accurate copy of which is attached hereto as Exhibit U, p. 2, is substantially similar to its counterpart that forms part of the Winstanley Design for Bay Harbour, the MWAP 13 East Elevation, a true and accurate copy of which is attached hereto as Exhibit U, p. 1.

83. Defendants' 13 Right/West Elevation, a true and accurate copy of which is attached hereto as Exhibit V, p. 2, is similar to its counterpart that forms part of the Winstanley Design for Bay Harbour, the MWAP 13 West Elevation, a true and accurate copy of which is attached hereto as Exhibit V, p. 1.

84. Considered collectively, Defendants' Lot 13 Elevations as currently depicted on the Bay Harbour Website are substantially similar to the MWAP Lot 13 Elevations, are being used by defendants without MWAP's prior knowledge, permission, or proper attribution, and their continued use by defendants constitutes infringement of MWAP's copyright on the Winstanley Design for Bay Harbour.

### 6. **Infringement by J & B Construction**

85. At some point following the Gordon Sale, defendant J & B began construction of the Lot 12 House based, directly or indirectly, upon designs and concepts contained in the Permit Documents for the Lot 12 House and other elements of the Winstanley Design for Bay Harbour. True and accurate photographic representations of the Lot 12 House as it appeared on the J & B Website in late 2008 are attached hereto as Exhibit W, pp. 1 - 3.

86. Defendant J & B's use of the Winstanley Design for Bay Harbour on the J & B Website and in the actual construction of the Lot 12 House, without MWAP's permission, prior

knowledge, or proper attribution, constitutes infringement of MWAP's copyright on the Winstanley Design for Bay Harbour.

87.     At some point following the Gordon Sale, defendant J & B began construction of the Lot 13 House based, directly or indirectly, upon designs and concepts contained in the Permit Documents for the Lot 13 House and other elements of the Winstanley Design for Bay Harbour. True and accurate photographic representations of the Lot 13 House as it appeared on the J & B Website in late 2008 are attached hereto as Exhibit X, pp. 1 - 3.

88.     Defendant J & B's use of the Winstanley Design for Bay Harbour on the J & B Website and in the actual construction of the Lot 13 House, without MWAP's permission, prior knowledge, or proper attribution, constitutes infringement of MWAP's copyright on the Winstanley Design for Bay Harbour.

## COUNT ONE
### (Copyright Infringement)

89.     Plaintiff MWAP repeats and realleges each and every allegation contained in paragraphs 1 - 88 of the Complaint.

90.     The actions of defendants violate MWAP's exclusive copyrights to the Winstanley Design for Bay Harbour constituting an infringement of MWAP's copyrights under 17 U.S.C.A. §§106 and 501.

91.     Upon information and belief, defendants' copyright infringement was knowing, willful and intentional.

92.     Defendants' actions have caused, and will continue to cause, irreparable damage to MWAP for which there exists no adequate remedy at law.

93.     During the pendency of this action, and permanently thereafter, defendants should be enjoined and restrained from copying, preparing derivative works based upon, constructing

houses and landscape designs based upon, or otherwise infringing upon, directly or indirectly, MWAP's copyright in the Winstanley Design for Bay Harbour.

94.    MWAP is entitled to recover all damages suffered as a result of defendants' wrongful acts, including but not limited to profits obtained by each and all defendants as a result of their wrongful acts and the loss of profits sustained by MWAP. In the alternative, MWAP is entitled to recover statutory damages in an amount to be determined by the court.  MWAP is also entitled to recover all reasonable attorneys fees, court costs, and interest on said damages from the date of defendants' infringement.

## COUNT TWO
(Breach of Contract)

95.    Plaintiff MWAP repeats and realleges each and every allegation contained in paragraphs 1 - 94 of the Complaint.

96.    By constructing the Lot 12 House substantially in accordance with the MWAP Lot 12 House Elevations, and by failing to credit MWAP as the Design Architect for the Project on the Bay Harbour Website and on the Billboard Sign, defendant Bay Harbour LLC I is in breach of its Letter Agreement with MWAP.

97.    By constructing the Lot 13 House substantially in accordance with the MWAP Lot 13 House Elevations, and by failing to credit MWAP as the Design Architect for the Project on the Bay Harbour Website and on the Billboard Sign, defendant Bay Harbour LLC II is in breach of its Letter Agreement with MWAP.

98.    As a result of defendant Bay Harbour LLC I and defendant Bay Harbour LLC II's breach of their respective Letter Agreements with MWAP, MWAP has suffered actual monetary and other damages.

## COUNT THREE
### (Unjust Enrichment)

99.     Plaintiff MWAP repeats and realleges each and every allegation contained in paragraphs 1 - 98 of the Complaint.

100.    By infringing upon MWAP's copyright on the Winstanley Design for Bay Harbour, defendants have unjustly enriched themselves at the expense of MWAP, and as a result MWAP has suffered damages.

## COUNT FOUR
### (Conversion)

101.    Plaintiff MWAP repeats and realleges each and every one of the allegations contained in paragraphs 1 - 100 of the Complaint.

102.    By their conduct, defendants have intentionally and wrongfully exercised ownership and control over the personal property of MWAP, namely, the Winstanley Design for Bay Harbour, despite demands by MWAP that defendants cease from doing so, and as a result MWAP has suffered damages.

## COUNT FIVE
### (False Designation of Origin - Lanham Act)

103.    Plaintiff MWAP repeats and realleges each and every one of the allegations contained in paragraphs 1 - 102 of the Complaint.

104.    The Winstanley Design for Bay Harbour was conceived by MWAP and presented in the MWAP Master Plan, the MWAP Landscape Plans, and the MWAP Permit Documents.

105.    The MWAP Landscape Plans for Bay Harbour were final construction documents and were completed by MWAP for Gordon prior to the Gordon Sale.

106.    The page of the Bay Harbour Website entitled "Contact Us" credits defendants Eleey and The Addison Group as being the Landscape Architect for the Project.

107.     Various elements of the Winstanley Design for Bay Harbour are evident throughout the Bay Harbour Website, the J & B Website, the Billboard Sign, and in the designs of the Lot 12 House and the Lot 13 House, but none of these elements is credited to MWAP or to Winstanley.

108.     In the section of the Bay Harbour Website entitled "Contact Us", the following statement appears: "Amanda [Burden] and Jason [Stone] have assembled an exceptional team of professionals to assist in the development of Bay Harbour. They are listed below." Defendants Luff, Archi - Tech, J & B, Eleey, and The Addison Group are listed; MWAP and Winstanley are not listed.

109.     In the section of the Bay Harbour Website entitled "Contact Us", defendants Luff and Archi-Tech Associates are credited as the Architect for the Project.

110.     In the section of the Bay Harbour Website entitled "Contact Us", defendant Archi-Tech is credited as for the design of the "Exterior Plans" for the Project.

111.     In falsely attributing to themselves the various components of the Winstanley Design for Bay Harbour, defendants, by their conduct, have violated the Lanham Act, 15 U.S.C. §1125(a), and have caused MWAP to suffer damages.

## COUNT SIX
### (Unfair and Deceptive Trade Practices - M.G.L. c. 93A)

112.     Plaintiff MWAP repeats and realleges each and every one of the allegations contained in paragraphs 1 - 111 of the Complaint.

113.     Prior to the Gordon Sale, Winstanley received a telephone call from defendant Stone in which Stone informed Winstanley that he was in the process of purchasing Bay Harbour from Gordon. Stone represented to Winstanley that Stone did not have an architect but was seeking one as he was eager to move ahead with construction in order to complete the Project. Stone further represented to Winstanley that he would like to engage MWAP as it had been the

original architect for the Project. During that telephone conversation, defendant Stone invited Winstanley to visit him to discuss MWAP's continued involvement with Bay Harbour.

114.     As a result of Stone's representations to Winstanley that MWAP would most likely be hired once Stone took control of the Project following the Gordon Sale, MWAP entered into the Four Letter Agreements. Among other things, the Four Letter Agreements contained a provision whereby MWAP gave permission to Gordon to assign his rights to the Permit Documents to the Four Buyers as part of the Gordon Sale, without additional compensation to MWAP, but on the condition that MWAP would be credited as the Design Architect for the Project if Bay Harbour were constructed substantially in accordance with the Winstanley Design for Bay Harbour.

115.     Defendant Stones' representations to Winstanley were false, as Stone had no intention either of using MWAP as architect for the Project or of crediting MWAP as the Design Architect. Rather, Stone's representations were made for the sole purpose of inducing MWAP to assign use of the Winstanley Design for Bay Harbour to the Four Buyers as part of the Gordon Sale, without compensation or credit to MWAP of any kind.

116.     During the closing of the Gordon Sale on or about June 10, 2008, defendant Stone made a last-minute telephone call to Winstanley. In the ensuing telephone conversation, Stone requested that each of the Four Letter Agreements that had already been executed by Winstanley and Gordon be amended by deleting paragraph 5 in its entirety. Stone coupled his request with the revelation that he had in fact already selected his own architect, and that Stone wished him and his firm rather than MWAP to receive the design credit for the Project.

117.     Winstanley initially refused Stone's request, but under the pressure of time and out of a concern lest he hold up the Gordon Sale, Winstanley agreed to an amendment of paragraph 5

whereby the original phrase "to the design intent of the documents" was stricken and replaced by the following phrase: "with the exterior elevations shown on the plans prepared for the issuance of the building permits". Thus the amended paragraph 5 reads now as follows:

> "The Buyer agrees that if the work is constructed substantially in accordance with the exterior elevations shown on the plans prepared for the issuance of building permits, that MWAP will be appropriately credited as the Design Architect for the project in any publications, sales brochures, print literature or other types of electronic media."

118. Following the Gordon Sale, MWAP became aware that defendants Stone and Burden were using the exterior elevations and other elements of the Winstanley Design for Bay Harbour on the Bay Harbour Website for development and marketing purposes, but without crediting MWAP as the Design Architect for the Project. As a result, MWAP, through its counsel, demanded in a letter to Stone dated November 18, 2008 that Stone cease and desist from all further use of the Winstanley Design for Bay Harbour.

119. In a letter from his counsel dated December 23, 2008, Stone responded with the false assertion that the exterior elevations for Lot 12 and lot 13 taken from the Winstanley Design for Bay Harbour had been removed from the Bay Harbour Website "some time ago". In fact, the exterior elevations, plus many other elements of the Winstanley Design for Bay Harbour, have been displayed on the Bay Harbour Website since its inception, and continue to be displayed on the Bay Harbour Website as of the date of this Verified Complaint.

120. In a further effort to resolve the ongoing dispute, Winstanley, through counsel, sent a second letter to defendant Stone's counsel dated January 12, 2009. While that letter itself remains unanswered, defendants Stone and Burden did respond by launching a second generation Bay Harbour Website that contains even more extensive and graphic representations

of elements of the Winstanley Design for Bay Harbour than the first website, this time explicitly crediting that work to parties other than MWAP.

121.    Defendants Stone and Burden are engaged in trade and commerce as defined under Massachusetts General Laws, Chapter 93A.

122.    By their conduct, defendants Stone and Burden have engaged in unfair and deceptive trade practices.

123.    The actions of defendants Stone and Burden have been willful and intentional.

124.    MWAP has been damaged by defendants' conduct and is entitled to recover treble damages, costs, and attorneys fees.

## COUNT SEVEN
### (Fraud In The Inducement)

125.    Plaintiff MWAP repeats and realleges each and every one of the allegations contained in paragraphs 1 - 124 of the Complaint.

126.    MWAP entered into the Four Letter Agreements as a result of the false and fraudulent representations made to it by defendant Stone, who knew that the representations were untrue and intended that MWAP should act upon them.

127.    MWAP was unaware of the false nature of the representations that defendant Stone made concerning MWAP's likely selection as the architect for the Project following the Gordon Sale, and in reliance upon those representations, MWAP entered into the Four Letter Agreements.

128.    As a result of defendant Stone's conduct, MWAP has suffered damages.

WHEREFORE, plaintiff MWAP demands judgment against defendants as follows:

1.      An order from this Court, in accordance with 17 U.S.C. §502, preliminarily and permanently enjoining and restraining defendants and their respective agents, along with those in active participation with defendants, from copying, constructing houses or landscape design based upon, or preparing, directly or indirectly, derivative works based upon MWAP's copyright in the Winstanley Design for Bay Harbour;

2.      An order from this Court preliminarily and permanently enjoining and restraining the Town of Provincetown from further inspecting, approving, or issuing permits or certificates of occupancy in connection with Bay Harbour;

3.      An order from this Court directing the Town of Provincetown to rescind or suspend the building permits associated with Lots 10, 12-16 of the Project;

4.      A monetary judgment against defendants for MWAP's damages and the profits derived by defendants from their unauthorized use of the Winstanley Design for Bay Harbour and infringement upon MWAP's copyrights in that design; or, in the alternative, statutory damages in accordance with 17 U.S.C.A. §504 in an amount to be determined by the Court based upon defendants' intentional, willful, and deliberate copyright infringement;

5.      An order from this Court awarding MWAP all its reasonable attorneys fees and costs incurred by it in pursuit of this copyright infringement and false designation of origin claim, along with interest and all damages from the date of defendants' infringement and false designation of origin, in accordance with 17 U.S.C.A. §505 and 15 U. S. C. §1117(a);

6.      An order from this Court awarding MWAP treble damages, costs, and attorneys fees in accordance with the provisions of M.G.L. c. 93A; and

7.      All other legal and equitable relief as the Court deems just and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL COUNTS.**

## VERIFICATION

I, Michael R. Winstanley, principal of Michael Winstanley Architects Planners, the plaintiff in this action, verify on my own personal knowledge that the facts set forth in this Verified Complaint are true and accurate to the best of my knowledge, information, and belief.

MICHAEL WINSTANLEY ARCHITECTS PLANNERS

BY: _Michael R. Winstanley_
    Michael R. Winstanley

Dated: 3/20/09

MICHAEL WINSTANLEY
ARCHITECTS PLANNERS, PC,
By its attorneys,

/s/ Louis M. Ciavarra

Frank L. McNamara, Jr. (BBO #339300)
Louis M. Ciavarra, Esq. (BBO #546481)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 926-3414
FAX: (508) 929-3055
fmcnamara@bowditch.com
lciavarra@bowditch.com

Date: March 23, 2009